## COLONDRO v. STATE OF INDIANA.

### [No. 23,563.   Filed November 18, 1919.]

1. CRIMINAL LAW.—*Self-Defense.*—*Right to be in Place.*—*Defendant's Belief.*—The defendant's belief that he is in a place where he has a right to be, coupled with the fact that he is so suddenly attacked with a deadly weapon that there is no opportunity to escape, perfects a right of self-defense; the belief alone goes only to rebut his bad faith in bringing on the conflict.   p. 535.

2. CRIMINAL LAW.—*Instructions.*—*Requests.*—If the defendant desired certain principles more particularly applied to his theory of defense, he should have tendered instructions on this phase of the case.   p. 535.

3. WITNESSES. — *Impeachment.* — *Contradictory Statements.* — Where the jury finds that a witness has made statements out of court at variance with his testimony, the fact may tend to

impeach the recollection or truthfulness of the witness, and the jury may consider the point in determining the weight to be given his testimony. p. 535.

4. CRIMINAL LAW.—*Abstract Instruction.*—*Harmless Error.*—*Witnesses.*—In a prosecution for murder, resulting in a conviction for manslaughter, an instruction that, if the jury believed from the evidence that the moral character of any witness had been successfully impeached on the trial, then that fact might be considered in estimating the weight of his testimony, was erroneous where there was no evidence on the subject; but, the instruction being on a subsidiary matter, the error was harmless, in view of evidence conclusively establishing the defendant's guilt as found by the verdict. p. 536.

5. CRIMINAL LAW.—*Remarks of Court on Testimony.*—*Harmless Error.*—In a prosecution for murder, resulting in a conviction for manslaughter, the remark of the trial judge, in reference to an exception taken by counsel for the defendant during the latter's examination, that the question was not improper as assuming anything, because the defendant "testified about going forward and going away and going back," though erroneous, was harmless where the evidence conclusively established the defendant's guilt as found by the verdict. p. 539.

From Lake Superior Court; *Walter T. Hardy,* Judge.

Prosecution by the State of Indiana against Michael Colondro. From a judgment of conviction, the defendant appeals. *Affirmed.*

*C. B. Tinkham* and *Ralph W. Ross,* for appellant.

*Ele Stansbury,* Attorney-General, *A. B. Cronk* and *Dale F. Stansbury,* for the state.

TOWNSEND, J.—Appellant was indicted for murder, tried by a jury, and convicted of manslaughter.

He complains of the court's instructions Nos. 7, 9 and 10 on the subject of self-defense, because they base appellant's right to self-defense on his being "in a place where he had a right to be so far as his assailant was concerned." Appellant's counsel says that none of these instructions takes into account the proposition that a person, in a place where he has no right to be so far as his assailant is concerned, may be suddenly attacked

with a deadly weapon and driven to the wall. Counsel further claims error in these instructions because they do not take into account appellant's good faith in believing that he was where he had a right to be so far as his assailant is concerned.

In counsel's second claim he is not quite accurate. Appellant's belief that he was in a place where he had a right to be does not make his right of self-defense; but it goes to rebut his bad faith in bringing on the conflict, and, when coupled with the fact that he is so suddenly attacked with a deadly weapon that there is no opportunity to escape, his right of self-defense is perfect.

1.

Appellant's counsel says that there was evidence from which the jury might infer that appellant was knowingly where he had no right to be, but that this evidence was only shadowy and not legally conclusive, and that therefore these instructions misled the jury into thinking that appellant could never have the right of self-defense when in a place where he had no right to be, so far as his assailant is concerned.

Appellant admits that these instructions given by the court are correct in principle, but his complaint is that these principles are not elaborately enough applied to his theory of defense. If appellant wanted these principles more particularly applied to his theory, he should have tendered instructions on this phase of the case. *Colee* v. *State* (1881), 75 Ind. 511, 516. Counsel does not call our attention to any instructions tendered by him and refused by the court. The court did not err in the above instructions on the points claimed by the appellant.

2.

Appellant next complains of the court's instruction No. 18. This instruction told the jury, in substance, that, if they found that any witness had made statements out of court at variance to his testi-

3.

mony on the stand, this might tend to impeach the recollection or the truthfulness of the witness, and the jury might consider this in determining the weight to be given to the testimony of such witness.

Thus far the instruction is correct and is favorable to appellant, for he attempted to show that some of the state's witnesses had made statements out of court at variance to their testimony on the stand.

The court, however, closed the above instruction with this sentence: "And if you believe from the evidence that the moral character of any witness, or witnesses, has been successfully impeached on this trial, then that fact may be taken into consideration in estimating what weight you ought to give to their testimony." This sentence in the instruction covers a phase of the law on which there is no evidence in the case. It was therefore erroneous and should not have been given. Instructions should announce the law applicable to the evidence. It is error for the court to announce propositions of law, even though correct, where there is no evidence on that subject. The reason for this is obvious. The jury are trying to apply all of the instructions of the court to the evidence, and the court, by instructing outside of the evidence, misleads the jury by practically telling them that there is some evidence on the subject. This error of the court, however, is a very slight one. It is on a subsidiary matter not like a principle of law going to the very gist of the charge or the defense. It was error, but not reversible error. The evidence in this case shows that appellant was clearly and conclusively guilty of all that the jury found by their verdict; therefore this court should not be nice to find error upon which to reverse the judgment.

The evidence shows that appellant was a track-walker on a railroad in the steel company's plant at

Gary, Indiana; that the decedent was a watchman at a bridge over the Calumet river; that he (decedent) was stationed at the end of the bridge next to the plant to prevent persons from going over this bridge; that on the evening in question, appellant came from his work between five and six o'clock; that, instead of walking along the road where workmen were walking, he walked ten or fifteen feet from the road on the side next to this watchman; that the watchman saw him and told him to get back on the road; that thereupon a physical encounter occurred between the two; that both went into their pockets for knives; that the watchman got his knife out first and struck several blows; that one blow above appellant's eye caused blood to run down over his face; that appellant broke away from decedent; that after this first encounter, and at the time appellant broke away from the decedent, they were ten or fifteen feet apart; that a foreman, who was in an office about 300 feet away from the controversy, seeing this first combat, came out and remonstrated with appellant and decedent and told appellant to go home; that decedent paid no attention to appellant at this time, but was standing still some distance from appellant; that after this foreman had gone, or while he was going, back to his office to call someone up on the telephone, appellant kept walking towards decedent, with his right hand in his pocket, talking to the decedent and gesticulating with his left hand; that at this time decedent stood in the roadway with his hands at his side, and apparently paid no attention to appellant; that appellant kept walking towards decedent and talking; that finally he suddenly lunged at decedent and struck him a backhanded blow with his right hand; that decedent did not move while appellant was thus going towards him, nor for an instant after the blow was struck; that appellant slowly backed away after delivering this blow; that

someone in the crowd of workmen called decedent's attention to a knife sticking in his breast in the region of his heart; that thereupon decedent plucked this knife from his breast, pursued appellant, striking him in the back; that appellant kept running and escaped decedent; that decedent turned around and walked back a short distance in a zigzag manner, sank down, and died from this knife wound.   All of the evidence showed that there was a very appreciable time between the first encounter and the time appellant struck the fatal blow; that decedent indicated by his conduct that he considered the encounter over, and that appellant, out of anger and in a spirit of revenge, came back and struck the fatal blow when there was no occasion for self-defense at all.

The above circumstances were testified to by several witnesses with such slight variation in details as to show truthfulness and disinterestedness.   Even appellant's own testimony, when taken all together, does not sharply contradict this.   True, he claims it was all one encounter, but he admits that he was away from decedent three or four or five feet at the time between the first encounter and the second, when he drew his knife and struck the fatal blow, but claims the decedent was holding him with his left hand and striking with his right.   In this connection, it is important to note that the evidence shows that appellant is thirty-six years old, five feet five inches tall, and weighs from 150 to 152 pounds; that decedent was twenty-nine years old, five feet eight inches tall, and weighed about 136 pounds.

We have thus touched upon the main points in the evidence to throw light on the previous discussion of error, and also that it may be kept in view in what we shall say on another error claimed by appellant.

In the course of the cross-examination, appellant was asked:   Q.   "After you got loose from Mr. Spradley (decedent) what did you do?"   A.   "I saw myself all

full of blood and I was excited and I put my hand in my pocket and pulled out my knife and struck him." Q. "What was he doing while you were taking out your knife?" A. "He was holding me, coming closer."

Counsel for the defendant interposed at this point, saying: "Give us everything." Whereupon this further answer was made by appellant, through the interpreter: A. "He said about three or four feet from him." Then came this question by the state: Q. "He was not holding you then, if he was three or four feet from you?" A. "He says, his arm is long enough to reach three or four feet, he says. * * *" Then this question on cross-examination, through an interpreter: Q. "How far away from Spradley were you when you got your knife out?" A. "About four feet, he says, or five feet." Then this question followed immediately by the state: Q. "Did you talk to him (Spradley) when you were going up to him just before you stabbed him?" Counsel for the defendant: "I object to the question. The question assumes that he walked up to him." Court: "Answer the question, take an exception if you want it." Defendant's counsel: "The question assumes something, Judge, that is not fair." Court: "I do not think so. He testified about going forward and going away and going back." Counsel for the defendant: "I take exception to the remarks of the court and his interpretation of what the evidence was." Court: "You can take an exception."

The state contends that appellant presents no question because he did not move to withdraw the submission of the case and discharge the jury. This we need 5. not decide, for, while we hold that the remark of the court was improper and was error, it was harmless error in this case. If the evidence in this case were close on the subject of self-defense, we would have a different question; but it is far from close. As we

said before, appellant's own story taken as a whole is not sharply in conflict with the circumstances detailed by the state's witnesses. This pathway, near which this fight took place, was filled with many persons who saw this encounter. No one was produced to corroborate appellant's weak claim of self-defense. Appellant, immediately after the killing, went to one of the counsel who defended him in the trial. This counsel went with him to the prosecuting attorney and to the court and arranged for recognizance. Thus, from the very beginning, appellant had an opportunity to see and interview witnesses, and to have counsel do so for him. Under the evidence in this case, with perfect instructions and exemplary conduct every instant of the time on the part of both the court and counsel, twelve honest men of ordinary intelligence could not have found appellant guilty of a less offense than voluntary manslaughter— exactly what they did find him guilty of.

There being no reversible error in the record, the judgment of the trial court is affirmed.

NOTE.—Reported in 125 N. E. 27. See under (1) 21 Cyc 822.